UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AHDUT BEAN, PLLC,<br><br>Plaintiff,<br><br>v.<br><br>ECHO HEALTH, INC., and CHRISTINE A. IBANEZ ,<br><br>Defendants. | CASE NO. C24-1630 MJP<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court on Defendant Echo Health, Inc.'s Motion to Dismiss the Amended Complaint. (Dkt. No. 25.) Having reviewed the Motion, Plaintiff's Response (Dkt. No. 27), the Reply (Dkt. No. 28), and all supporting materials, the Court GRANTS the Motion and DISMISSES the claims against Echo Health, Inc. with prejudice.

**BACKGROUND**

Ahdut Bean, PLLC, a dentistry practice in Seattle that goes by the name of Green Leaf Dental, alleges that its former administrative employee, Christine Ibanez, embezzled at least $156,000 in insurance payments that should have been deposited in Bean's account. (Amended

Complaint ¶¶ 1, 15-19 (Dkt. No. 24).) According to Bean, between May 2022 and March 2024, Ibanez "diverted" virtual credit cards (VCC) issued by Defendant Echo Health Inc. that were intended to be payments made by Echo on behalf of insurers. (Id. ¶¶ 7-19.) Echo has no direct contractual relationship with Bean. Instead, Echo acts as a sort of middleman by "facilitat[ing] payments from health insurers to dental practices, like Plaintiff, in exchange for a fee recouped from the VCC transaction." (Id. ¶ 9.) As alleged, "VCCs are virtual one-time use credit cards" that "are sent via fax or email to a dental office with a number unique to the particular transaction." (Id. ¶ 9.) According to Bean, VCCs are a "payment method." (See id. ¶ 14.) But according to Bean, the use of VCCs "come[s] with a very high risk of fraud and embezzlement" because they can be diverted by "[a]nyone with a credit card reader[.]" (Id. ¶ 13.)

Bean alleges that although Echo sent the VCCs to Bean, it should have investigated whether the VCCs were deposited into Bean's operating account. (AC ¶¶ 21, 34, 42.) Bean alleges Echo should have noted that the VCCs it sent to Bean were deposited into Square accounts not associated with Bean that had different names, such as "SQ*DENTAL," "SQ*DENTAL BILLING CO," "SQ*GREEN," and "SQ*GREEN LEAF DENTAL." (Id. ¶¶ 17, 21, 34, 42.) Bean also alleges that on April 15, 2024, Dr. Ahdut received an email from Echo's fraud analyst, stating that Echo had processed payments to Square without receiving verbal or written confirmation that Echo was paying legitimate Square accounts. (Id. ¶ 21.) As to Echo's investigation, Bean further alleges that Echo sent several letters and called twice with Bean's office, though Bean does not identify the timing or contents of the letters or calls. (Id. ¶ 22.)

Bean pursues three causes of action against Echo. First, Bean now alleges on information and belief that Echo owed a contractual obligation "to take reasonable measures to ensure the payments its makes actually reach the intended beneficiaries." (AC ¶ 34.) Bean claims that Echo

ORDER GRANTING MOTION TO DISMISS - 2

"breached the contracts by failing to take any reasonable measures to ensure the payments reached Plaintiff." (Id. ¶ 37.) Second, Bean alleges that Echo acted negligently by failing "to take any reasonable measures to ensure that the payments it was responsible for facilitating to Plaintiff actually reached their intended beneficiary." (Id. ¶ 42.) Third, Bean alleges that Echo violated the Washington Consumer Protection Act by "fail[ing] to take any reasonable measures to ensure that the payments it was responsible for facilitating to Plaintiff actually reached the intended beneficiary," which Bean claims "constitutes a failure to pay sums legally owed to Plaintiff[.]" (Id. ¶ 50.)

Echo now seeks dismissal of these amended claims, after having obtained dismissal of the claims set out in the initial Complaint.

## ANALYSIS

**A.    Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

B.     **Breach of Contract**

Bean has failed to identify a contractual duty Echo owed to Bean as a third-party beneficiary, and its breach of contract claim fails.

Before considering the present Motion, the Court briefly reviews the problems it found with Bean's initial breach of contract claim. In the initial Complaint, the claim was premised on a purported breach of a contractual obligation to make payment to Bean. As the Court explained, "Bean actually alleges that Echo made payments to Bean, but that Ibanez 'diverted' them into Square accounts." (Order on MTD at 3 (Dkt. No. 23).) The Court concluded that Echo could not have "failed and refused to pay Plaintiff" in violation of the contract if it made the payments and Ibanez then diverted them. (Id. at 4.) In reaching this conclusion, the Court explained that "the term 'pay' does not also include the concept of verifying the payment was received and deposited in a specific account." (Id.)

Bean now alleges that it is a third-party beneficiary to contracts between Echo and dental insurers to "facilitate payments to Plaintiff." (AC ¶¶ 10-12, 33-34.) On information and belief, Bean alleges Echo was obligated "to take reasonable measures to ensure the payments its makes actually reach the intended beneficiaries." (Id. ¶ 34.) This alleged contractual obligation arises out of Bean's belief that "[t]he contracts must contain some sort of quality/fraud control obligation; otherwise, ECHO Health could pay any random account and collect the same transaction fees as if it paid the correct account authorized by the intended beneficiary." (Id. ¶ 34.)

There are two problems with Bean's amended claim. First, Bean has not identified a breach of Echo's purported contractual obligation to make sure "the payments it makes actually reach the intended beneficiary." (AC ¶ 34.) That is because Bean admits that Echo sent VCCs to

Bean either via email or fax and that Ibanez diverted them. (AC ¶¶ 9-10, 16.) It also admits that VCCs are a form of payment. (Id.) Consistent with the Order on the first motion to dismiss, the Court finds that there are inadequate allegations that Echo failed in any contractual duty to send payment to Bean. It remains true that Bean received the VCC payments and the only reason they were not deposited into Bean's operating accounts was due to employee embezzlement.

Second, the Court finds the alleged contractual obligation to engage in post-payment quality/fraud control to be far too tenuous to support a claim. Bean's claim turns on a conclusory supposition that "[t]he contracts must contain some sort of quality/fraud control obligation[.]" (AC ¶ 34.) But the Court has not been given sufficient allegations as to why this requirement "must" be a part of the contracts between Echo and insurers. And even if this contractual term existed, there are inadequate allegations of how Echo failed in its fraud control obligations. Bean alleges that Echo contacted Bean in April 2024, sent letters, and made various calls. But Bean does not explain what specific steps were taken and why they were inadequate to satisfy any contractual obligation.

The Court GRANTS the Motion and DISMISSES the breach of contract claim against Echo.

**C.    Negligence**

Echo correctly argues that Bean continues not to adequately identify any common law duty that it violated.

Bean alleges that Echo failed its common law duty "to take any reasonable measures to ensure that the payments it was responsible for facilitating to Plaintiff actually reached their intended beneficiary." (AC ¶ 42.) But Bean does not identify any case law that would support imposing duty on Echo to ensure that the funds it paid were ultimately deposited into an account

associated with Bean. (Id.) At best, Bean cites to a Washington Supreme Court stating that "every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 550 (2019) (considering this duty "in the context of law enforcement" which "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance"). But there are no allegations here that Echo engaged in "affirmative acts of misfeasance." Id. Rather, it is alleged to have failed to undertake an analysis of where the funds it paid Bean were ultimately deposited. This is an omission, not an affirmative act, which renders the broad statement from Beltran inapplicable. Bean has otherwise failed to identify any authority for the proposition that Echo had a duty to determine whether the VCCs it paid ended up in Bean's operating account. This is fatal to the negligence claim.

Given the absence of a duty identified to sustain the claim as pleaded, the Court GRANTS the Motion and DISMISSES the negligence claim against Echo.

**D.   CPA Claim**

Bean's CPA claim fails to identify an unfair or deceptive act and it must be dismissed.

Bean now alleges three ways in which Echo purportedly violated the CPA. First, Echo "fail[ed] to pay sums legally owed to Plaintiff" by "failing to take any reasonable measures to ensure that the payments . . . reached the intended beneficiary." (AC ¶ 50.) Second, Bean claims Echo forced it to use VCCs and has accepted transaction fees "for sums not actually paid to Plaintiff[.]" (AC ¶ 51.) Third, Bean alleges that Echo advertisings fraud prevention technology and services that it does not adhere to with regard to VCCs. (AC ¶ 52.) None of these theories holds water.

1    First, there are no cogent allegations that Echo failed to pay Bean. As Bean concedes, it
2    received the VCCs that Echo issued, and that VCCs are a form of payment. (AC ¶¶ 9-10, 16.)
3    Bean has not identified why it was unfair or deceptive that Echo did not undertake separate
4    measures to make sure Bean deposited the VCC funds into his operating account. Indeed, Bean
5    does not argue that this allegation supports denial of the Motion to Dismiss. (See Opp. at 11
6    (omitting any mention of the failure to investigate as a basis of the claim).)

7    Second, there are no cogent allegations that Echo violated the CPA by forcing Bean to
8    accept VCC payments and pocketing fees. As Bean admits, a dentist can opt out of receiving a
9    VCC payment. (AC ¶ 11.) Bean alleges that it was nonetheless required to accept VCCs because
10   the opt-out method is onerous and it would have to be done on a transaction-by-transaction basis.
11   (AC ¶ 11.) But there are no details as to why the opt-out process is onerous, other than the fact it
12   would have to be done for each VCC. Missing are any details about why the opt-out process is
13   unfair or deceptive. Similarly, Bean's claim that Echo received fees without actually paying
14   Bean rings hollow. Bean did, in fact, receive the VCCs as a form of payment. It was only due to
15   the criminal acts of Bean's employee that the funds were not then deposited into Bean's
16   operating account. Given that Echo effectuated a payment of VCC to Bean, any fees received are
17   not part of an unfair or deceptive act where there is an interceding act of a criminal third party.
18   These allegations do not evidence an unfair or deceptive act.

19   Third, Bean has failed to allege how Echo violated the CPA by advertising its fraud
20   detection services or how this harmed Bean. As Bean concedes, the alleged advertisement of
21   these services occurred in October 2024, well after Bean filed suit and any of the VCCs that
22   Ibanez embezzled were issued. (AC ¶¶ 16-19; Complaint (Dkt. No. 1).) As such, Bean has not
23   alleged how these representations were made to Bean or how it was harmed by any reliance on
24

the representations. At most, Bean suggests that what it experienced did not align with Echo's advertisement. But that does not show an unfair or deceptive act that caused Bean itself to suffer any harm. This is not a viable basis on which to pursue a CPA claim, as there is no evidence causation or harm from the advertisement.

The Court GRANTS the Motion and DISMISSES the CPA claim against Echo.

## CONCLUSION

Bean continues not to state viable claims against Echo. All three claims suffer from fatal defects. The Court also finds no grounds to believe that further amendment could save the claims. Bean made use of its opportunity to amend its claims, but it continues not to state viable claims. As such, the Court GRANTS the Motion and DISMISSES the claims against Echo WITH PREJUDICE.

The Court also directs Bean to move for default judgment against Ibanez within 30 days of this Order. Alternatively, within 30 days of this Order, Bean may move to set aside the order of default and file a joint status report with Ibanez reporting on what changes, if any, should be made to the case schedule. Failure to move for default judgment or file the joint status report may lead to dismissal of the claims against Ibanez for failure to prosecute.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 27, 2025.

Marsha J. Pechman
United States Senior District Judge